IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Roxana Orellana Santos, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-09-2978 |
| | * | |
| Frederick County Board of Commissioners, | * | |
| et al., | * | |
| Defendants. | * | |

**************

**MEMORANDUM**

This case arises out of the interrogation and detention of Plaintiff Roxana Orellana Santos. On October 7, 2008, Frederick County Sheriff's Office deputies – acting pursuant to an agreement between the Sheriff's Office and the Department of Homeland Security – approached Santos, who was eating lunch outside a local shopping center, and asked her for identification. When she was unable to provide satisfactory identification, the deputy sheriffs handcuffed her, placed her in the back of a police cruiser, and turned her over to U.S. Immigration and Customs Enforcement ("ICE"). Santos spent the next month in an alien detention facility at the Dorchester County Jail.

Santos contends that the deputy sheriffs were neither trained nor certified to perform the functions of federal immigration officers. She further alleges that the deputies approached, interrogated, and detained her based solely on her perceived race, ethnicity, and/or national origin. Her First Amended Complaint contains claims[1] against the deputy sheriffs, the Frederick County Sheriff, the Frederick County Board of Commissioners ("FCBC"), and a number of

---

[1] A full description of Santos's claims is provided *infra*.

1

Federal Defendants.[2] Now pending are Defendants' motions to dismiss.[3] (Docket Nos. 8, 13, 18, and 38).[4] Because the issues are adequately addressed in the briefs, no hearing is necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court will, by separate order, (i) GRANT in Part and DENY in Part the Motion to Dismiss filed by deputy sheriffs Openshaw and Lynch, (ii) GRANT the Motion to Dismiss filed by Sheriff Jenkins, (iii) DENY the Renewed Motion to Dismiss filed by the FCBC, and (iv). GRANT in Part and DENY in Part the Motion to Dismiss filed by the Federal Defendants.

## I. FACTUAL BACKGROUND

Because Defendants have filed the pending motions, the Court views the facts in the light most favorable to Santos.

### A. The 287(g) Memorandum of Agreement Between the Frederick County Sheriff's Office and the Department of Homeland Security

Section 287(g) of the Immigration and Nationality Act, 8 U.S.C.§ 1357(g), authorizes the Department of Homeland Security ("DHS") to enter into agreements with state and local law enforcement agencies. Under these agreements, selected individuals are certified to carry out functions of federal immigration officers. In 2008, the Frederick County Sheriff's Office

---

[2] The Federal Defendants are: (i) Julie L. Myers, the former Assistant Secretary for Immigration and Customs Enforcement, (ii) Calvin McCormick, the Field Office Director of the ICE Office of Detention and Removal in Baltimore, Maryland, and (iii) James A. Dinkins, the Special Agent in Charge of the ICE Office of Investigations in Baltimore.

[3] Defendants' motions primarily address procedural defects in Santos's case. As such, the motions discuss neither Santos's immigration status nor which factors may be considered by the police when deciding to interrogate individuals regarding their immigration status. While these issues need not be discussed at this juncture, they may be relevant at the summary judgment stage.

[4] Docket No. 7 is DISMISSED as moot because the FCBC later filed a "Renewed Motion to Dismiss (Docket No. 13).

became the first local agency in Maryland to sign a 287(g) Memorandum of Agreement ("MOA") with ICE, an investigative agency within the DHS.

Under the terms of the MOA, select Sheriff's Office personnel are authorized to exercise "immigration-related authorities during the course of criminal investigations involving aliens encountered within Frederick County." In doing so, the Sheriff's Office employees are "expected to pursue to completion prosecution of State or local charges that caused the individual to be taken into custody." The MOA also provides that "only participating . . . personnel who are selected, trained, authorized, supervised, as set out herein, have authority pursuant to this MOA to conduct the immigration officer functions enumerated in this MOA."

Santos alleges that the Sheriff's Office, led by Frederick County Sheriff Charles Jenkins, has overzealously implemented the MOA and, in doing so, engaged in the discriminatory practice and policy of targeting and interrogating individuals about their immigration status based solely on the individuals' perceived race, ethnicity, and/or national origin. She contends that this involves the selective enforcement of state and local law. In support of that position, Santos notes that in 2008 less than 10% of individuals detained by the Sherriff's Office under the MOA were charged with felonies.[5]

### B. Santos's Interrogation and Detention

At approximately 11:30 a.m. on October 7, 2008, Santos was sitting on a curb in a grassy area behind a food co-op in Frederick, Maryland. She was eating her lunch and looking out onto a pond when deputy sheriffs Openshaw and Lynch drove by in their patrol car. While neither Openshaw nor Lynch was certified under the MOA to perform the functions of immigration

---

[5] Santos also contends that the Federal Defendants failed to ensure that the Sherriff's Office complied with federal immigration law and procedure.

officers, they nevertheless approached Santos and asked her for identification.[6] Santos told the deputies that she did not have identification with her. Openshaw and Lynch continued to question her, asking, among other things, whether she had a passport. While Santos initially responded that she did not have a passport with her, she later remembered that she had a National Identification Card in her purse and surrendered it to one of the deputies.

At that point, one of the deputies took the identification, examined it, and appeared to use his radio. The other deputy used hand gestures to tell Santos that she should remain seated. After approximately fifteen minutes, Santos, who had been seated on the curb during the entire encounter, stood up and reached down to collect her purse. As she did so, one of the deputies put his hands on her shoulders and prevented her from leaving. The other deputy handcuffed her hands behind her back and placed her in the back of the police cruiser.

Santos was neither arrested for, nor charged with, the violation of any local, state, or federal criminal law, and no incident report has been filed. Despite that, she was transferred to ICE custody and spent a month in an alien detention facility at the Dorchester County Jail.

## C. The Instant Litigation

Santos filed her initial Complaint on November 10, 2009 and her First Amended Complaint on January 29, 2010. The First Amended Complaint[7] contains eight counts: (i) a § 1983 claim for unlawful arrest against deputy sheriffs Openshaw and Lynch, (ii) a § 1983 equal protection claim against Openshaw and Lynch, (iii) a § 1983 claim for unlawful seizure against Openshaw and Lynch, (iv) a § 1985(3) conspiracy claim against Openshaw and Lynch, (v) a § 1983 claim for personal supervisory liability against Sheriff Jenkins, (vi) a claim for

---

[6] Santos is a native Spanish speaker and had difficulty communicating with the deputies. She alleges that the deputies were similarly unable to effectively communicate with her.

[7] For the remainder of this Memorandum, Santos's First Amended Complaint will be referred to as the "Complaint."

violation of Title VI of the Civil Rights Act of 1964 against the FCBC, (vii) a Monell entity liability claim against the FCBC, and (viii) a failure to supervise claim against the Federal Defendants. Defendants have moved to dismiss each of the counts.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of her claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III. ANALYSIS

### A. § 1983 Claims against Sheriff Jenkins and Deputies Openshaw and Lynch

In her Complaint, Santos asserts a variety of § 1983 claims against both Sheriff Jenkins and deputy sheriffs Openshaw and Lynch.[8] Because the analysis of these claims involves the same core issue, the Court analyzes them together.

Section 1983 "provides a cause of action for constitutional deprivations arising out of actions taken under color of state law." Askew v. Bloemker, 548 F.2d 673, 676-77 (7th Cir. 1976); see also Rosas v. Brock, 826 F.2d 1004, 1007 (11th Cir. 1987) (holding that "[o]ne prerequisite to suit under [§ 1983] is that the challenged action be taken under color of state law"). It does not provide a cause of action for constitutional violations occurring under color of

---

[8] Specifically, she brings § 1983 claims alleging violation of the Fourth and Fourteenth Amendments against deputies Openshaw and Lynch, and a § 1983 claim for personal supervisory liability against Sheriff Jenkins.

5

federal law. Askew, 548 F.2d at 677. Those claims are properly brought as Bivens actions. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 389 (1971) (holding that a cause of actions exists for individuals whose constitutional rights have been violated by federal agents). Thus, in this case, the critical inquiry is whether Jenkins, Openshaw, and Lynch were acting under color of state or federal law when interrogating and detaining Santos.

Pursuant to 8 U.S.C § 1357(g)(8), an individual "acting under . . . any agreement entered into under this subsection, shall be considered to be acting under color of federal authority for purposes of determining liability . . . in a civil action." In other words, local law enforcement officers are acting under color of federal, not state, authority when "assisting in enforcing immigration laws and incarcerating illegal aliens," and may not be subject to § 1983 actions arising out of that assistance. Arias v. U.S. Immigration & Customs Enforcement, 2008 U.S. Dist. Lexis 34072, at *40 (D. Minn. Apr. 23, 2008). Here, Jenkins, Openshaw, and Lynch were participating in the enforcement of federal immigration law when interrogating and detaining Santos.[9] As a result, they were acting under the color of federal law and may not be sued under § 1983. See Arias, 2008 U.S. Dist. Lexis 34072, at *42; see also Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (quoting the district court as finding that "because [Defendant] was acting pursuant to federal authority, he took on the rights and obligations of a federal officer"). A Bivens action is the proper means of bringing claims against them.

---

[9] Even if, as Santos contends, deputies Openshaw and Lynch were not certified under the 287(g) MOA, a formal agreement is not necessary for state or local law enforcement to assist in the enforcement of federal immigration laws. See U.S. v. Vasquez-Alvarez, 176 F.3d 1294, 1300 (10th Cir. 1999) (noting that "a formal agreement is not necessary for state and local officers "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States") (citing 8 U.S.C § 1357(g)(10)). Indeed, Congress has extended a "clear invitation . . . for state and local agencies to participate in the process of enforcing federal immigration laws." Id.

6

While Santos is correct in noting that the Court has the discretion to construe her § 1983 claims as <u>Bivens</u> claims, it chooses not to exercise that discretion at this time. The cases cited by Santos primarily concern the situation in which a court construes a § 1983 claim as a <u>Bivens</u> claim prior to dismissing the case in its entirety. <u>See</u>, e.g., <u>Johnson v. Flannery</u>, 55 Fed. Appx. 702 (4th Cir. 2003); <u>Tucker v. Hambrick</u>, 25 Fed. Appx. 184 (4th Cir. 2002). Here, the Court is not dismissing Santos's case, and clear pleadings will be helpful as the case progresses. Accordingly, Defendants' motions to dismiss Santos's § 1983 claims against Jenkins, Openshaw, and Lynch are granted. Santos is granted leave to file a second amended complaint containing <u>Bivens</u> claims against those Defendants. She is directed to file that complaint within thirty (30) days.

**B.     Claims for Injunctive Relief**

In addition to claims for monetary damages, Santos asks the Court to "issue [an] . . . injunction (a) restraining and enjoining defendants from stopping and interrogating individuals regarding their immigration status based solely on their perceived race, ethnicity, and/or national origin; (b) restraining and enjoining Defendants from selectively enforcing local ordinances and laws; [and] (c) restraining and enjoining Defendants from arresting individuals based on civil immigration violations unless those individuals have been charged and/or arrested for a criminal offense under Maryland law." Confronted with that request, the Court finds that Santos lacks standing to seek injunctive relief.

In <u>City of Los Angeles v. Lyons</u>, the Supreme Court held that a plaintiff lacked standing to seek an injunction when his allegations did "nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or

7

resistance on his part." 461 U.S. 95, 105 (1983); see also Baie v. Jones, 717 F.2d 925, 928-29 (4th Cir. 1983) (holding that a former prisoner of a county jail lacked standing to challenge general conditions in the jail because he was no longer a prisoner); Mancha v. ICE, 2007 U.S. Dist. Lexis 89414, at *7-8 (N.D. Ga. Dec. 5, 2007) (finding that a plaintiff lacked standing to bring a claim for injunctive relief against ICE agents who detained them where the plaintiff had shown no real and immediate threat of future harm). Here, Santos alleges a past injury but has not identified a real and immediate future threat. Indeed, she pleads no factual allegations showing that she faces an immediate threat of being re-arrested for civil immigrations violations under the 287(g) MOA. Accordingly, the Court dismisses Santos's claims for injunctive relief.

### C. Remaining Claims

Except as noted herein, the defendants' other grounds for dismissal are premature. Because the grounds turn on factual issues that must be developed through discovery, they are properly raised through a motion for summary judgment rather than a motion to dismiss. The Court will issue a scheduling order that includes a discovery period and a timetable for briefing dispositive motions.

### D. Bifurcation

Finally, the Court is inclined to bifurcate the claims against the FCBC and the Federal Defendants. In this district, it is common practice to bifurcate failure to train and failure to supervise claims until a Constitutional violation has been established. Bifurcation can substantially reduce litigation costs and result in greater judicial efficiency. Before bifurcating the claims, however, the Court would like to hear from counsel. A telephone conference call will be held to discuss the issue. The call will take place on Friday, September 10, at 3:00 PM.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will, by separate order, (i) GRANT in Part and DENY in Part the Motion to Dismiss filed by deputy sheriffs Openshaw and Lynch, (ii) GRANT the Motion to Dismiss filed by Sheriff Jenkins, (iii) DENY the Renewed Motion to Dismiss or, in the Alternative, to Bifurcate filed by the FCBC, and (iv) GRANT in Part and DENY in Part the Motion to Dismiss filed by the Federal Defendants.


Dated this 25th day of August, 2010.

                                                                  _____/s/_____
                                                                  Benson Everett Legg
                                                                  United States District Judge