IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td>ROXANA ORELLANA SANTOS,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-09-2978</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>FREDERICK COUNTY BOARD OF<br>COMMISSIONERS, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Roxana Orellana Santos sued the Frederick County Board of Commissioners (the "Board") and others[1] for civil rights violations arising from her arrest and detention in relation to a civil deportation warrant.[2] The Honorable U.S. District Judge Benson E. Legg resolved all claims against Santos; she appealed. ECF Nos. 99, 111.[3] The U.S. Court of Appeals for the Fourth

---

[1] Santos also sued Frederick County Sheriff Charles Jenkins, Frederick County Deputy Sheriffs Jeffrey Openshaw and Kevin Lynch, and Immigration and Customs Enforcement ("ICE") agents Julie L. Myers, Calvin McCormick, and James A. Dinkins (collectively, the "Defendants"). ECF Nos. 1 (complaint), 12 (first amended complaint). The original complaint named "John Doe" instead of Lynch; the first amended complaint named Lynch. *Compare* ECF Nos. 1 at 1, 16-19, *with* ECF No. 12 at 1, 15-19. Hereinafter, Openshaw and Lynch will be referred to as the "Deputies"; Jenkins and the Board as the "Municipal Defendants"; and Myers, McCormick, and Dinkins as the "ICE agents."

[2] *See* 42 U.S.C. §§ 1983, 1985, 2000d (2006).

[3] *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 884 F. Supp. 2d 420 (D. Md. 2012).

Circuit affirmed in part, vacated in part, and remanded for consideration of Santos's municipal and official-capacity claims.  ECF No. 115.[4]  Pending are the Municipal Defendants' motion to dismiss the second amended complaint, or for summary judgment, ECF No. 132, and Santos's motion for leave to file a third amended complaint, ECF No. 136.  No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the following reasons, Santos's motion will be granted in part and denied in part; the Municipal Defendants' motion will be denied as moot.

I.   Background

   A.   Facts[5]

   Santos is originally from El Salvador and now resides in Frederick County, Maryland.  ECF No. 136-1 ¶ 2.  Jenkins, who was elected in 2006, is the Sheriff of Frederick County; Openshaw and Lynch are Deputy Sheriffs.  *Id*. ¶¶ 3-5, 9.  The Board "fully funds" the Frederick County Sheriff's Office ("FCSO"), "which operates under a set of law enforcement policies, practices[,] and customs directed and affected by Frederick County."  *Id*. ¶ 6.  The Board trains, supervises, and

---

[4] *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 1541, 188 L. Ed. 2d 557 (2014).

[5] The facts are from Santos's proposed third amended complaint. ECF No. 136-1.

disciplines FSCO officers in connection with their law enforcement duties. *Id.* ¶ 129.

Under § 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g),[6] the Department of Homeland Security ("DHS") may execute agreements with state and local law enforcement agencies. *Id.* ¶ 16. Those agreements permit "selected [state and local] officers [to] receive certification to carry out certain functions of federal immigration officers." *Id.* The "§ 287(g) program" is intended "to address serious criminal activity . . . by foreign nationals." *Id.* ¶ 17. In 2008, the FCSO "became the first local agency in Maryland to participate in the § 287 program." *Id.* ¶ 14 (internal quotation marks omitted). On February 5, 2008, Jenkins, on behalf of the FCSO, signed a Memorandum of Agreement with ICE regarding the § 287(g) program (the "§ 287(g) MOA"). *Id.* ¶ 18. The Deputies were not trained or certified to participate in the § 287(g) program. *Id.* ¶ 19.

On October 7, 2008, the Deputies were on routine patrol near a food store on Buckeystown Pike in Frederick Maryland. *Id.* ¶¶ 35, 61. Santos sat behind the store eating her lunch. *Id.* ¶ 33. The Deputies approached Santos. *Id.* ¶¶ 35, 37. The Deputies asked Santos several questions, including whether she

---

[6] Section 1357(g) governs the performance of immigration officer functions by state officers and employees. *See* 8 U.S.C. § 1357(g) (2006).

had a passport.  *Id.* ¶¶ 40-44.  Santos did not have a passport
with her; she gave the Deputies her Salvadoran national
identification card.  *Id.* ¶¶ 44, 48.  Openshaw "appeared to use
his radio while [] Lynch watched [] Santos."  *Id.* ¶ 50.  Santos
asked "whether there was a problem"; Openshaw said, "no," and
gestured for her to remain seated.  *Id.* ¶ 51.  After some time,
Santos "stood up . . . and reached down to collect her purse."
*Id.* ¶ 54.  When she stood up, the Deputies handcuffed her and
"place[d] her in the backseat of the cruiser."  *Id.* ¶ 55.  The
Deputies arrested Santos on the basis of a federal civil
immigration warrant in the National Crime Information Center
("NCIC") database.  *Id.* ¶ 56.  On November 11, 2008, Santos was
released from custody "for humanitarian reasons."  *Id.* ¶ 58.
Santos has not been charged with a crime.  *Id.* ¶¶ 59-60.

"A recent report" evaluating the implementation of the §
287(g) program by participating jurisdictions--including
Frederick County--found that several arrests had been made "by
officers neither trained nor certified under the [§]287(g)
program, even though the arrests were identified as part of the
[§]287(g) program."  *Id.* ¶ 28.  Santos alleges that Jenkins has
"failed to train and supervise FCSO deputies that are not
certified under the [§] 287(g) MOA to ensure proper use of the
NCIC database" and to "ensure that they were not seizing or
arresting individuals based solely on civil immigration

4

violations or civil immigration warrants." *Id*. ¶¶ 67-68. "Jenkins was or should have been aware that only FCSO deputies authorized pursuant to the [§]287(g) MOA could enforce federal immigration law." *Id*. ¶ 113.

Jenkins updates the Board "about federal immigration enforcement by the FCSO." *Id*. ¶ 130. Jenkins and the Board allegedly created or promulgated a policy, practice, or custom under which local law enforcement officials engage in unlawful conduct. *Id*. ¶¶ 106, 131. Jenkins and the Board were allegedly deliberately indifferent to the potential constitutional violations resulting from the lack of adequate training about the § 287(g) program and enforcing federal immigration law. *Id*. ¶¶ 107, 132.

   B.   Procedural History

On November 10, 2009, Santos filed a § 1983 complaint against the Defendants. ECF No. 1.[7] On January 29, 2010, Santos amended her complaint. ECF No. 12.[8]

---

[7] Santos alleged eight causes of action:
(1) unlawful arrest under 42 U.S.C. § 1983 (Openshaw and Doe);
(2) equal protection under 42 U.S.C. § 1983 (Openshaw and Doe);
(3) unlawful seizure under 42 U.S.C. § 1983 (Openshaw and Doe);
(4) conspiracy under 42 U.S.C. § 1985 (Openshaw and Doe);
(5) supervisory liability under 42 U.S.C. § 1983 (Jenkins);
(6) violation of Title VI of the Civil Rights Act of 1964 under 42 U.S.C. § 2000d (the Board);
(7) entity liability under *Monell v. Dept. of Social Servs. Of the City of New York*, 436 U.S. 658 (1978) (the Board);

On August 25, 2010, Judge Legg dismissed without prejudice Santos's § 1983 claims against Jenkins, Openshaw, and Lynch because she had alleged that those defendants were acting under color of federal law,[9] and granted her leave to file a second amended complaint containing *Bivens* claims against those defendants. ECF Nos. 50, 51.[10]  Judge Legg stated that he was "inclined to bifurcate" the claims against the Board and the ICE agents, but deferred ruling on that issue until he had heard from counsel. ECF No. 50 at 8.  On September 30, 2010 Judge Legg ordered "limited discovery" to determine whether Jenkins, Openshaw, and Lynch had been acting under federal law when relevant events occurred. ECF Nos. 57 (Order memorializing September 14, 2010 telephone conference); 58 at 22:15-17 (transcript of September 14, 2010 telephone conference) (Judge Legg: "[Santos] can only file a second amendment complaint

---

(8) failure to supervise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (the ICE agents).
ECF No. 1 at 16-24.

[8] Santos substituted Lynch for "Doe" but did not otherwise amend her claims. *See generally* ECF No. 12-1 (redline version).

[9] Section 1983 provides a cause of action against persons acting under color of *state* law. *See* 42 U.S.C. § 1983.

[10] *See Santos v. Frederick Cnty. Bd. of Comm'rs.*, No. L-09-2978, 2010 WL 3385463 (D. Md. Aug. 25, 2010).  That day, Judge Legg entered a scheduling order setting October 12, 2010 as the deadline for amending pleadings and February 7, 2011 as the deadline for dispositive pretrial motions. ECF No. 52-1 at 2.

alleging *Bivens* claims if they can allege that the officers were acting pursuant to Federal law and Federal authority."); *id.* at 27:3-13  (Judge Legg suggesting that before Santos amends her complaint to convert her § 1983 claims to *Bivens* actions, her counsel should depose Jenkins and the Deputies to determine whether they were operating under state or federal law).

On February 4, 2011, pursuant to a conference call held that day, Judge Legg ordered, *inter alia*, that "[a]ll supervisory liability claims will be bifurcated" and "discovery and subsequent motions will encompass only claims against the individual defendants."  ECF No. 66.  He further ordered Santos to file a second amended complaint by February 18, 2011.  *Id.* On February 9, 2011, Judge Legg approved Santos's stipulation of dismissal of the ICE agents.  ECF No. 72.  On February 18, 2011, Santos filed a second amended complaint.  ECF No. 75.[11]

---

[11] Santos did not restyle her claims against Jenkins, Openshaw, and Lynch as *Bivens* actions and deleted language alleging actions taken under federal law.  *See* ECF No. 75-1 at 20, 24, 26.  Santos renumbered her causes of action and deleted count eight against the ICE agents:
(1) unlawful seizure under 42 U.S.C. § 1983 (Openshaw and Lynch in their individual and official capacities);
(2) unlawful arrest under 42 U.S.C. § 1983 (Openshaw and Lynch in their individual and official capacities);
(3) equal protection under 42 U.S.C. § 1983 (Openshaw and Lynch in their individual and official capacities);
(4) conspiracy under 42 U.S.C. § 1985 (Openshaw and Lynch in their individual and official capacities);
(5) supervisory liability under 42 U.S.C. § 1983 (Jenkins in his individual and official capacities; bifurcated and stayed);

On February 7, 2012, Judge Legg granted the Deputies'
motion for summary judgment.  ECF No. 99.  Judge Legg found that
(1) the Deputies had not unreasonably seized Santos in violation
of the Fourth Amendment as alleged in counts one and two; (2)
the Deputies had not racially discriminated against Santos in
violation of the Fourteenth Amendment as alleged in count three;
and (3) there was no evidence of a conspiracy as alleged in
count four.  ECF No. 98 at 7-17.  Judge Legg also dismissed
counts five to seven against the Board and Jenkins because
Santos had not established constitutional violations by the
Deputies.  *Id.* at 17.  On July 11, 2012, Judge Legg denied
Santos's motion for reconsideration.  ECF No. 110.[12]  On August
9, 2012 Santos timely appealed to the Fourth Circuit.  ECF No.
111.[13]

    2.  The Fourth Circuit's Opinion

    On August 7, 2013, the Fourth Circuit affirmed in part,
vacated in part, and remanded the case to this Court.  ECF No.

---

(6) violation of Title VI of the Civil Rights Act of 1964 under
    42 U.S.C. § 2000d (the Board; bifurcated and stayed); and
(7) entity liability under *Monell v. Dept. of Social Servs. Of
    the City of New York*, 436 U.S. 658 (1978) (the Board;
    bifurcated and stayed).
ECF No. 75 at 13-20.

[12] Santos had asked the Court to reconsider its decision
regarding counts one, two, five, and seven.  ECF No. 101.

[13] Santos did not appeal Judge Legg's Equal Protection decision.
*See* ECF No. 115 at 11 n.2; *Santos*, 725 F.3d at 459 n.2.

115. The Fourth Circuit found that the Deputies had violated Santos's Fourth Amendment rights "when they seized her solely on the basis of the outstanding civil ICE warrant" because they "were not authorized to engage in immigration law enforcement" under § 287(g), 8 U.S.C. § 1357. *Id.* at 27. However, the Fourth Circuit found that qualified immunity barred Santos's individual claims against the Deputies because, when they detained Santos, "it was not clearly established that local law enforcement officers may not detain or arrest an individual based solely on a suspected or known violation of federal civil immigration law." *Id.* at 36.[14] However, because the Deputies had violated Santos's constitutional rights and as qualified immunity does not bar claims against municipalities, the Fourth Circuit found that Judge Legg erred in dismissing Santos's official-capacity claims and claims against the Board. *Id.* at 39.[15] Accordingly, the Fourth Circuit remanded the suit to

_____

[14] To determine whether a defendant is entitled to qualified immunity, the Court considers whether the plaintiff has established that a constitutional violation occurred, and if so, whether the constitutional right was "clearly established" when the violative conduct occurred. *Meyers v. Baltimore Cnty., Md.,* 713 F.3d 723, 731 (4th Cir. 2013).

[15] The Fourth Circuit noted that plaintiffs alleging constitutional injuries may sue municipalities--such as the Board--under *Monell*, and may sue government officials--such as Openshaw, Lynch, and Jenkins--in their official capacities under *Hafer v. Melo*, 502 U.S. 21 (1991). ECF No. 115 at 37-38. However, "[f]or purposes of Section 1983, these official-

"determine whether the [D]eputies' unconstitutional actions are attributable to an official policy or custom of the county or the actions of a final county policymaker." *Id*. at 39.[16]

### 3.   Proceedings on Remand

Also on August 7, 2013, the case was reassigned from Judge Legg to this Court. *See* Docket.  On October 9, 2013, the Court approved the parties' joint request to stay proceedings pending the outcome of the Municipal Defendants' petition for a writ of certiorari to the U.S. Supreme Court.  ECF No. 125.  On March 24, 2014, the U.S. Supreme Court denied the Municipal Defendants' petition.  *Frederick Cnty. Bd. of Comm'rs v. Santos*, 134 S. Ct. 1541, 188 L. Ed. 2d 557 (2014).

On October 17, 2014 the parties filed status reports.  The Municipal Defendants stated, *inter alia*, that they intended to file a dispositive motion and that Santos had consented to their request to file within 60 days.  ECF No. 129 at 2-3.  Santos stated, *inter alia*, that a dispositive motion is premature and additional discovery is needed because of previous bifurcation; however, she consented to the filing of such a motion.  ECF No. 130 at 2.  She further stated that she may seek leave to file a

---

capacity suits are 'treated as suits against the municipality.'" *Id*. at 38 (*quoting Hafer*, 502 U.S. at 25).

[16] On September 10, 2013, the Fourth Circuit denied the Municipal Defendants' petition for rehearing *en banc*.  ECF No. 117.

third amended complaint.  *Id.*  On October 20, 2014, the Court approved the Municipal Defendants' status report.  ECF No. 131.

On December 16, 2014, the Municipal Defendants moved to dismiss or for summary judgment.  ECF No. 132.  On February 13, 2015, Santos opposed the motion.  ECF No. 137.[17]  That day, Santos moved for leave to file a third amended complaint.  ECF No. 136.  On March 6, 2015, the Municipal Defendants opposed Santos's motion.  ECF No. 140.[18]

II. Analysis

    A.  Motion for Leave to Amend

        1.  Legal Standard

The Municipal Defendants assert that Santos must first satisfy the good cause requirement of Federal Rule of Civil Procedure 16(b),[19] which governs pretrial scheduling, before her motion is assessed under the more liberal Rule 15(a)(2)[20] standards.  ECF No. 140 at 7-10.  They further assert that she has failed to show good cause.  *Id.* at 10-13.  Santos asserts that Rule 16(b) is inapplicable because Judge Legg's preliminary

---

[17] On March 31, 2015, the Municipal Defendants replied.  ECF No. 144.

[18] On March 23, 2015, Santos replied.  ECF No. 142.

[19] Fed. R. Civ. P. 16(b).

[20] Fed. R. Civ. P. 15(a)(2).

scheduling order "is obsolete"; but in the event Rule 16(b)

applies, she has demonstrated good cause.  ECF No. 142 at 2-9.

Under Rule 16(b)(4), "[a] schedule may be modified only for

good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)

(4); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298

(4th Cir. 2008) (when the deadline provided by the scheduling

order has passed, Rule 16(b)(4) governs requests for leave to

amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md.

2002) ("[A] court's scheduling order is not a frivolous piece of

paper, idly entered, which can be cavalierly disregarded by

counsel without peril.").  Good cause exists when "the moving

party has diligently made efforts to meet court imposed

deadlines," or when evidence came to light after the deadline.

*Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–

69 (D. Md. 2010) (citations omitted); *see also In re Lone Star

Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429 (4th

Cir. 1994) (unpublished table opinion) (good cause found when

facts discovered after the amendment deadline).[21]  Leave to amend

may be denied when the moving party was careless or failed to

explain the reason for failing to properly plead. *See id*. at

769; *Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x

---

[21] *Cf. Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743
F.2d 1039, 1044 (4th Cir. 1984) (district court abused its
discretion in denying an amendment when evidence for amendment
was discovered shortly before trial).

156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. CIV.A. WMN-10-2336, 2015 WL 628968, at *7 (D. Md. Feb. 11, 2015) (good cause met in light of "changing circumstances," including denial of class certification and "anticipated decertification of the collective action").

Assuming, without deciding, that Rule 16(b) applies, Santos has demonstrated good cause for seeking leave to amend her complaint. Judge Legg previously modified his preliminary scheduling order to set February 18, 2011 as the deadline for Santos to amend her complaint. ECF No. 66. However, communications between counsel and the Court made plain that Santos's second amended complaint was intended to clarify whether her claims arose under § 1983 or *Bivens*, which turned on whether Jenkins and the Deputies acted under color of state or federal law when the Deputies arrested Santos. ECF Nos. 57 (ordering limited discovery on that issue); 58 at 22:15-17; 27:3-13 (directing Santos to file a second amended complaint after completing limited discovery). Moreover, on February 4, 2011, before the deadline for filing the second amended complaint, Judge Legg bifurcated all municipal liability claims. ECF No. 66. Because Santos's municipal liability claims were

13

stayed pending resolution of her individual-capacity claims,
Santos at that time had no reason to amend those claims--nor
would moving to amend her municipal liability claims before the
Fourth Circuit issued its opinion have been appropriate in light
of Judge Legg's bifurcation order.  *Id.* (limiting discovery *and
motions* to claims against individual defendants).[22]   On remand,
those claims have been revived; thus, the circumstances of the
case have "chang[ed]."  *See Faust*, 2015 WL 628968, at *7.
Further, some of Santos's proposed factual allegations appear to
involve events that occurred after she filed her second amended
complaint, further justifying a finding of good cause.  *See* ECF
No. 136-1 ¶¶ 28, 74; *Tawwaab*, 729 F. Supp. 2d at 768-69.

Additionally, Santos has not unreasonably delayed seeking
to amend her complaint after the Fourth Circuit remanded the
suit.  The suit was stayed pending the outcome of the Municipal
Defendants' petition for writ of certiorari to the U.S. Supreme
Court.  ECF No. 125.  Although the Court approved the Municipal

---

[22] The Municipal Defendants also argue that Santos cannot
establish good cause to amend her complaint *now* because--from
September 2010 to February 2011--she had the opportunity to
engage in "broader discovery" about the relationship between ICE
and local officials.  ECF No. 140 at 12 (*citing* ECF No. 58 at
13) (transcript of September 14, 2010 telephone conference,
during which Judge Legg discussed *possible* advantages of
bifurcation).  However, Judge Legg's subsequent September 30,
2010 Order permitted only "limited discovery" about whether
Jenkins and the Deputies had acted under federal law, ECF No.
66, not the broader issues about local policies and practices
relevant to Santos's municipal liability claims.

Defendants' status report in October 2014, that status report simply stated that the Municipal Defendants intended to file a dispositive motion and did not bar Santos from seeking leave to amend, as her status report indicated she would.   ECF Nos. 130, 131.[23]   That Santos waited four months to seek leave to amend does not alone demonstrate dilatory conduct meriting denial of her motion; Santos filed her motion the same day she opposed the Municipal Defendants' motion to dismiss or for summary judgment. *See* ECF Nos. 133, 134; *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 281 (4th Cir. 1987) (district court abused its discretion in denying leave to amend sought three months after learning new facts in suit pending for over three years); *cf. Nat'l Bank of Wash. v. Pearson*, 863 F.2d 322, 327-28 (4th Cir. 1988) (district court properly denied leave to amend when there was evidence of undue delay, bad faith, and prejudice because the movant waited four years to move to amend and provided no explanation for the delay).

---

[23] In attempting to explain why an untimely dispositive motion should be permitted but not leave to amend, the Municipal Defendants suggest that their status report stated good cause to modify the prior scheduling order to allow them to file a dispositive motion.   ECF No. 140 at 11; *see also* ECF No. 129 (status report).   However, as Santos notes, the Municipal Defendants did not request leave to file or explain why good cause should be found.   ECF No. 142 at 5 n.1.   They merely asserted that the remaining claims could be resolved as a matter of law or on the basis of existing discovery, and would file their motion within 60 days.   ECF No. 129 at 2-3.

Because Santos has demonstrated good cause, leave should freely be given when justice requires. Fed. R. Civ. P. 15(a)(2). Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010). An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States,* 55 F.3d 910, 917 (4th Cir. 1995).

### 2. Prejudice

The Municipal Defendants assert that they would be prejudiced by Santos's new allegations of conduct occurring after October 7, 2008 because "[r]ecords and memories have been lost over the intervening years" and additional discovery about the § 287(g) program "would be very burdensome in terms of time and financial cost." ECF No. 140 at 15-16. Santos argues that the Municipal Defendants should be judicially estopped from arguing prejudice due to additional discovery because the delayed discovery resulted from their request for bifurcation. ECF No. 142 at 9-12. She further asserts that additional discovery alone is insufficient to find prejudice. *Id.* at 15-18.

The Court need not decide whether the Municipal Defendants should be estopped from arguing prejudice, because it finds that they have not demonstrated prejudice meriting denial of Santos's motion.   "[T]he Fourth Circuit has very narrowly defined prejudice sufficient to overcome the liberal standard for granting amendments."  *Next Generation Grp., LLC v. Sylvan Learning Centers, LLC*, No. CIV. CCB-11-0986, 2012 WL 37397, at *5 (D. Md. Jan. 5, 2012).  For example, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies [when] the amendment is offered shortly before or during trial."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  The situation contemplated in *Johnson* is not present here.

That the new allegations are "separate in time" from the October 7, 2008 incident previously litigated[24] is understandable.  The individual-capacity claims focused on the Deputies' conduct when the arrest occurred.  *See* ECF No. 115 at 6-9; *Santos*, 725 F.3d at 457-58 (summarizing relevant facts).  In contrast, Santos's municipal liability claims turn on whether she can demonstrate the existence of an official policy or

---

[24] *See* ECF No. 140 at 15.

custom, which necessarily looks beyond the time of her arrest. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1299, 89 L. Ed. 2d 452 (1986)("'[O]fficial policy' often refers to formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.").

Further, the Court disagrees with the Municipal Defendants' assertion that it is "undisputed that the [§]287(g) program is unrelated" to the Deputies' conduct;[25] Santos's municipal liability claims are premised on the unlawful implementation of the § 287(g) program.[26]  The Municipal Defendants had notice that Santos's municipal liability claims related at least in part to the § 287(g) program and that those claims would be litigated if she proved that the Deputies violated her constitutional rights; thus, they should have taken steps to preserve relevant records. *See Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) ("Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence."); ECF No. 75 ¶¶ 3, 14-27, 97 (allegations in second amended complaint involving the § 287(g)

---

[25] ECF No. 140 at 13.

[26] *See, e.g.*, ECF No. 136-1 ¶¶ 106, 110, 113-117, 129-134.  For the same reason, the Municipal Defendants' arguments that Santos's § 287(g) allegations are made in bad faith or are futile, ECF No. 140 at 13, lack merit.

program).  As Santos contends, bifurcation is intended to delay discovery, not foreclose it;[27] the Municipal Defendants' failure to preserve relevant records should not be used as a reason to constrict Santos's claims.

The Municipal Defendants also assert that Santos's second amended complaint included "a claim of supervisory liability for an Equal Protection violation," which is no longer viable.  *Id.* at 18 (*citing* ECF Nos. 75 ¶ 57).[28]  According to the Municipal Defendants, Santos's amendments are prejudicial because they "do not clarify [her] supervisory claims against [] Jenkins, but rewrite them." *Id.* at 19.  The Municipal Defendants appear to contend that Santos's supervisory liability claim against Jenkins was predicated solely on an Equal Protection violation; thus, they would be prejudiced if the Court permitted her to "rewrite" that claim into one involving seizure under the Fourth Amendment.  However, Santos's second amended complaint had alleged a supervisory liability claim based on her seizure and

---

[27] ECF No. 142 at 18; *see, e.g.*, *Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 540 (D. Md. 1995); *Hanlin-Cooney v. Frederick Cnty., Md.*, No. CIV. WDQ-13-1731, 2014 WL 576373, at *13 (D. Md. Feb. 11, 2014) (staying discovery pending resolution of § 1983 individual-capacity claims).

[28] That allegation reads: "[u]pon information and belief, [] Jenkins has directed, encouraged, aided, abetted, and/or permitted deputies of the FCSO to selectively target for investigation and law enforcement individuals whom deputies perceive to be immigrants to the United States, in a manner inconsistent with the U.S. Constitution."  ECF Nos. 75 ¶ 57; 136-1 ¶ 65.

arrest.  *See* ECF No. 75 ¶ 93 (alleging that "Jenkins was personally involved in and proximately caused the aforementioned violations," referring to, *inter alia*, her Fourth Amendment claims for unlawful seizure and arrest); *id*. ¶ 98 ("Jenkins was or should have been aware that FCSO deputies have stopped, interrogated and detained individuals based solely on their perceived race, ethnicity and/or national original *and* have arrested individuals for violation of federal immigration law, even though those individuals have committed no criminal offense under Maryland law)(emphasis added).  Santos's proposed amendments delete language related to discriminatory stops and arrests and add specificity to her allegations about Jenkins's liability in connection with her seizure and arrest; which, as noted, above, were part of her second amended complaint.  *See* ECF No. 136-1 ¶¶ 111-19.  The Municipal Defendants' assertion of prejudice is unavailing.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)(district court abused its discretion in denying leave to amend; proposed allegations added specificity to matters presented in complaint, and prejudice to the defendants "[was] not obvious from the record"); *Next Generation Grp., LLC*, 2012 WL 37397, at 5 (granting leave to amend when "proposed amendment does not add counts or legal theories, but rather clarifies the identity and basis of alleged culpability of the various defendants").

3.    Futility

The Municipal Defendants assert that Santos has not alleged "other occurrences of a similar nature" showing that Jenkins or the Board were subjectively aware of unconstitutional customs, policies, or practices; thus, she has failed to state a *Monell* claim.  ECF No. 140 at 19-20.  In support, the Municipal Defendants cite--without explanation--*Connick v. Thompson*, 131 S. Ct. 1350, 1355, 179 L. Ed. 2d 417 (2011), and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  ECF No. 140 at 22.[29]  Santos asserts that her claims based on the Municipal Defendants' alleged failure to adequately train subordinates do not require a "pattern of similar constitutional violations," and the cases relied on by the Municipal Defendants do not support their argument.  ECF No. 142 at 21-22.

A § 1983 municipal liability claim based on the municipality's failure to train its employees must plausibly allege "deliberate indifference to the rights of persons with whom the [employees] come into contact."  *Canton*, 489 U.S. at

---

[29] The Municipal Defendants also cite *Walker v. Prince George's Cnty., MD*, 575 F.3d 426 (4th Cir. 2009).  There, the Fourth Circuit held that the plaintiffs failed to adequately plead a *Monell* claim because they "failed to make *any* allegations in their complaint in regards to the existence of the County's policy, custom, or practice" about the seizure of animals without asking whether the animals' owners have valid permits. *Id*. at 431 (emphasis added).  Beyond stating the pleading requirements, the application of *Walker* to this case is unclear.

388, 109 S. Ct. 1197.  That requires "proof that a municipal

actor disregarded a known or obvious consequence of his action."

*Connick*, 131 S. Ct. at 1360 (citation omitted)("[W]hen city

policymakers are on actual or constructive notice that a

particular omission in their training program causes city

employees to violate citizens' constitutional rights, the city

may be deemed deliberately indifferent . . . .").  Although "[a]

pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate

indifference for purposes of failure to train[, . . .] *Canton* .

. . left open the possibility that, 'in a narrow range of

circumstances,' a pattern of similar violations might not be

necessary to show deliberate indifference."  *Id.* at 1360-61

(*quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520

U.S. 397, 409, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626

(1997)).[30]  Thus, "evidence of a single violation of federal

rights, accompanied by a showing that a municipality has failed

---

[30] One such circumstance hypothesized by the *Canton* Court
involved a city's decision to arm and deploy police officers to
catch fleeing felons.  *Connick*, 131 S. Ct. at 1361 (*citing
Canton*, 489 U.S. at 390 n.10).  Because of the "frequency with
which police attempt to arrest fleeing felons and the
'predictability that an officer lacking specific tools to handle
that situation will violate citizens' rights,'" the city's
failure to train police about "constitutional limits on the use
of deadly force could reflect the city's deliberate indifference
to the 'highly predictable consequence,' namely, violations of
constitutional rights."  *Id.* (*quoting Bryan Cnty.*, 520 U.S. at
409, 117 S. Ct. 1382).

to train its employees to handle recurring situations presenting
an obvious potential for such a violation, could trigger
municipal liability." *Bryan Cnty*, 520 U.S. at 409, 117 S. Ct.
1382; *Brown v. Mitchell*, 308 F. Supp. 2d 682, 706 (E.D. Va.
2004) (*Canton* demonstrates that there are "two categories of
failure to train cases[:] one involving a pattern of consti-
tutional deprivations[; another] involving singular deprivations
of more obvious rights").

The Municipal Defendants essentially urge the Court to
ignore the "singular deprivation" category of a failure to train
claim.  Here, however, Santos alleges that the Municipal
Defendants had notice that training and supervision were
required to lawfully implement the § 287(g) program, were
responsible for training FCSO officers to perform their duties,
and were aware that FCSO officers were unlawfully enforcing
federal immigration law, which unlawful enforcement violated
Santos's (and, potentially others') Fourth Amendment rights.
*See, e.g.*, ECF No. 136-1 ¶¶ 16, 20, 29-30, 66-69, 107, 110-17,
120, 131-32.  The constitutional requirement imposed by the
Fourth Amendment on local law officers is clear: absent
authorization, they may not "arrest[] individuals solely based
on known or suspected civil immigration violations."  ECF No.
115 at 23; *Santos*, 725 F.3d at 464; *see also Arizona v. United
States*, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012).

Further, the Fourth Amendment duty is implicated in recurrent situations because NCIC--the database checked by officers for outstanding warrants--includes civil immigration warrants.  ECF Nos. 115 at 30-31; 136-1 ¶¶ 56, 67, 116; *Santos*, 725 F.3d at 467-68.  Because Santos's allegations implicate a clear and recurrent constitutional right, she has stated a cognizable failure to train claim.  *See Brown*, 908 F. Supp. 2d at 706 (plaintiff stated cognizable failure to train claim when case implicated clear and recurrent constitutional right).

The Municipal Defendants also assert that counts three and four alleging Equal Protection violations under 42 U.S.C. §§ 1983, 1985 are futile because those counts were adjudicated in their favor, and Santos did not appeal those judgments.  ECF No. 140 at 20.  The Municipal Defendants further assert that count six is futile because it is a "practice and policy claim based on an underlying Equal Protection violation . . . [that is] not supported by the Fourth Amendment violation" found by the Fourth Circuit.  ECF No. 140 at 20.

Beyond renumbering paragraphs, Santos has not proposed amending counts three and four.  *See* ECF No. 136-2 ¶¶ 90-104.  However, she has proposed amending count six to omit one paragraph.  ECF No. 136-2 at 23 (deleting ¶ 106).  It is not clear that Santos retained her Equal Protection and discrimination claims in an effort to revive them, or whether

they are simply vestiges of the second amended complaint.[31]
However, because an amended pleading supersedes the prior
pleading,[32] Santos's allegations may be construed as an attempt
to restate those claims; thus, the Court will consider whether
they are futile.

Judge Legg granted the Deputies summary judgment on counts
three and four and dismissed count six with prejudice because he
had not found an underlying constitutional violation.   ECF Nos.
98 at 17; 99.   Under Federal Rule of Appellate Procedure 28(a),[33]
an appellant's brief must contain "a statement of the issues
presented for review" and argument on each issue.   "Failure to
comply with the specific dictates of this rule with respect to a
particular claim triggers abandonment of that claim on appeal."
*Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir.
1999)   The sole issues raised by Santos's appeal were whether
Judge Legg erred in finding that the Deputies had not seized her
in violation of the Fourth Amendment violation, and that they
were entitled to qualified immunity.   *See Santos*, Civil No. 12-

---

[31] Santos has not responded to the Municipal Defendants'
arguments about these counts.   *See generally* ECF NO. 142.

[32] *See Blount v. Carlson Hotels*, 3:11CV452-M0C-DSC, 2011 WL
6098697, at *1 (W.D.N.C. Dec.6, 2011) (*citing Young v. City of
Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("The general
rule ... is that an amended pleading supersedes the original
pleading, rendering the original pleading of no effect.")).

[33] Fed. R. App. P. 28(a).

1980 (4th Cir. Nov. 8, 2012), Docket No. 16 at 16-17 (statement of issues in Santos's opening brief); *Santos*, 725 F.3d at 459 n.2. Accordingly, the Fourth Circuit remanded the suit solely for the purpose of resolving whether the Municipal Defendants were "responsible" for the Deputies' violation of Santos's Fourth Amendment rights. ECF No. 115 at 39; *Santos*, 725 F.3d at 470. Because Santos did not appeal Judge Legg's rulings on counts three, four, and six, she has abandoned those claims; thus, any attempt to relitigate those claims would be futile. Santos' motion for leave to file a third amended complaint will be denied in part as to counts three, four, and six, and granted in all other respects.[34]

B. Motion to Dismiss or For Summary Judgment

As noted above, "an amended pleading supersedes the original pleading"; thus, "motions directed at superseded pleadings are to be denied as moot." *Blount*, 2011 WL 6098697, at *1; *see also Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002) *aff'd,* 121 F. App'x 9 (4th Cir. 2005)(denying as moot motion to dismiss original complaint and resolving motion to dismiss amended complaint). Accordingly, the Municipal Defendants' motion to dismiss the second amended complaint, or for summary judgment, will be denied as moot.

---

[34] Santos will be ordered to file a perfected third amended complaint within 30 days of the accompanying Order.

III. Conclusion

For the reasons stated above, Santos's motion for leave to amend will be granted in part and denied in part; the Municipal Defendants' motion to dismiss the second amended complaint, or for summary judgment, will be denied as moot.


___8/26/15___
Date

_____
William D. Quarles, Jr.
United States District Judge

27