IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
ROXANA ORELLANA SANTOS           *
                                 *
v.                               *   Civil Action No. WMN-09-2978
                                 *
FREDERICK COUNTY BOARD OF        *
COMMISSIONERS et al.             *
                                 *
```

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Dismiss Third Amended Complaint or, in the Alternative, for Summary Judgment and Motion to Strike.  ECF No. 157.  The motion is fully briefed.  Upon review of the parties' submissions and the applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted in part and denied in part.

This action relates to an incident that occurred more than seven years ago, on October 7, 2008, in Frederick, Maryland. Aspects of Plaintiff's claims have been addressed by several decisions of this Court, the case was appealed to the Fourth Circuit Court of Appeals, and now has been remanded on a single narrow issue.  Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451 (4th Cir. 2013).[1]  Because the factual and procedural

---

[1] The case has also been assigned, in turn, to three different judges of this Court: first to Judge Benson Legg and then, upon

background of this action has been detailed in those previous opinions of this Court and by the Fourth Circuit, and because this Court finds that additional discovery is needed before the merits of the pending motion can be fully resolved, that background will not be repeated here in any significant detail. The factual and procedural background relevant to the Court's finding is as follows.

Plaintiff is a native of El Salvador and, on the day in question, was sitting on a curb eating her lunch behind her place of employment.  She was approached by two deputies of the Frederick County Sheriff's Office (FCSO), Deputies Jeffrey Openshaw and Kevin Lynch (the Deputies), who detained her and then arrested her after learning that she had an outstanding civil warrant for removal issued by Immigration and Customs Enforcement (ICE).  She was transferred to a Maryland detention center where she was later turned over to ICE.  After being detained by ICE for a little over a month, she was released on supervised release on November 13, 2008.

On November 10, 2009, Plaintiff filed this action under 42 U.S.C. § 1983 against the Deputies, Frederick County Sheriff Charles Jenkins, the Frederick County Board of Commissioners (Board), and several individuals from ICE and the Department of

---

his retirement, to Judge William Quarles and then, upon his retirement, to the undersigned.

Homeland Security.  Plaintiff asserted that the Deputies violated her Fourth Amendment right to be free from unreasonable seizures and violated the Fourteenth Amendment by targeting her because of her perceived race, ethnicity, or national origin.  The Complaint also included allegations concerning Sheriff Jenkins's anti-immigrant rhetoric and asserting that, during Jenkins's tenure as sheriff, Frederick County devoted an increasingly greater share of its resources to the enforcement of federal immigration laws.  Specifically, Plaintiff noted that the FCSO entered into a Section 287(g)[2] Memorandum of Agreement (287(g) MOA) with ICE under which certain deputy sheriffs were permitted to carry out certain limited functions of federal immigration officers.

All of the Defendants moved to dismiss the original complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On August 25, 2010, Judge Legg granted the motion, concluding that the Complaint was alleging that the Deputies were acting under color of federal and not state law and, therefore, that Plaintiff's suit should have been brought as a Bivens action,[3] and not as an action under § 1983.  ECF No. 50.

---

[2] The 287(g) program was authorized by Section 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g).

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiff was given leave to conduct discovery to determine whether Defendants were acting under color of federal law or state law, after which Plaintiff would be permitted to file an amended complaint.

In its initial Motion to Dismiss, the Board also requested, in the alternative, that the discovery and resolution of the merits of the claims against the Board be bifurcated from the claims against the individual defendants.  In a telephone conference held on February 4, 2011, which was memorialized in a Letter Order issued that same date, ECF No. 66, Judge Legg granted the request for bifurcation, concluding that discovery and anticipated dispositive motions would be initially limited to claims against the individual defendants.  Thus, only after liability of the individual defendants was determined would discovery on the claims against the Board be permitted.  Judge Legg also held that all discovery on the issue of damages would be deferred.

Plaintiff filed her Second Amended Complaint[4] on February 18, 2011, ECF No. 75, which removed the claims against the federal defendants, deleted some of the allegations related to the 287(g) MOA, but was again brought under § 1983.  After a

---

[4] Plaintiff had previously amended the Complaint to identify Deputy Lynch as the second deputy involved in her arrest.  First Am. Compl., ECF No. 12.  He had previously been identified as John Doe.

4

period of limited discovery, Defendants moved for summary judgment on the claims against the individual defendants. ECF No. 84. This Court granted the motion, concluding that the Deputies violated neither Plaintiff's Fourth Amendment rights nor the Equal Protection Clause of the Fourteenth Amendment. Santos v. Frederick Cty. Bd. of Comm'rs, 884 F. Supp. 2d 420, 428-30 (D. Md. 2012). Finding no violation on the part of the Deputies, the Court also dismissed the claims against Sheriff Jenkins and the Board. Id. at 432.

Plaintiff moved for reconsideration, citing a number of recent federal court decisions holding that state and local governments lack inherent authority to enforce civil federal immigration law. ECF No. 101. Judge Legg denied Plaintiff's motion, observing that even if those decisions represented a growing consensus, the Deputies would still be entitled to qualified immunity. Plaintiff filed a timely appeal.[5]

On appeal, the Fourth Circuit concluded that the Deputies did violate Plaintiff's Fourth Amendment rights when they detained and arrested her based solely on an outstanding federal civil immigration warrant. Santos, 725 F.3d at 465. Nevertheless, the Fourth Circuit affirmed the dismissal of the individual capacity claims against the Deputies based on

---

[5] Plaintiff did not appeal this Court's decision as to her Fourteenth Amendment Equal Protection claims. See Santos, 725 F.3d at 459 n.2.

5

qualified immunity "because the right at issue was not clearly established at the time of the encounter." Id. at 469. The court, however, concluded that this Court erred in dismissing the claims against the Board because qualified immunity does not extend to municipal defendants. Id. at 470. In addition, because "qualified immunity from suit under Section 1983 does not extend to municipal defendants or government employees sued in their official capacity," id., the court held it was also error to have dismissed the official capacity claims against the Deputies and Sheriff Jenkins.

> Having (erroneously) determined that the deputies did not violate Santos's constitutional rights, the district court did not have occasion to address whether the municipal defendants were "responsible" for the deputies' conduct. Therefore, on remand, the district court should determine whether the deputies' unconstitutional actions are attributable to an official policy or custom of the county or the actions of a final county policymaker.

Id.

When the case returned to this Court on remand, Plaintiff argued in her status report that discovery was necessary to develop the factual record in support of her municipal liability claim because, under this Court's bifurcation order, discovery had, thus far, been limited to the claims against the individual defendants. ECF No. 130. She also stated that she might seek leave to amend her complaint. Defendants suggested in their status report that Plaintiff's municipal liability claims "are

6

subject to decision as a matter of law or on the basis of the significant discovery that already has taken place." ECF No. 129. Defendants expressed an intent to file a "preliminary motion to dismiss or, in the alternative, for summary judgment," and the Court approved that request. ECF No. 131.

Defendants filed their preliminary motion on December 16, 2014. ECF No. 132. Plaintiff opposed that motion, ECF No. 137, but also sought leave to file a Third Amended Complaint. ECF No. 136. In opposing Plaintiff's motion for leave to amend, Defendants argued that her request was untimely, that they would be prejudiced by this late amendment, and that amendment would be futile. ECF No. 140. After those motions were fully briefed, Judge Quarles issued a Memorandum and Order on August 26, 2015, granting in part and denying in part Plaintiff's motion to amend and denying the motion to dismiss or for summary judgment as moot. ECF Nos. 148, 149.

In granting, in part, Plaintiff's motion to amend, Judge Quarles found that Plaintiff had demonstrated good cause for her delay in amending the complaint in that Judge Legg's bifurcation order had foreclosed the possibility of amending her municipal liability claims any sooner. ECF No. 148 at 14. He also rejected Defendants' assertion that they would be prejudiced by the "very burdensome" additional discovery that they argued would be needed concerning Plaintiff's "new allegations" that go

7

beyond the events of October 7, 2008. Id. at 16 (citing ECF No. 140 at 15-16). Judge Quarles observed that the new allegations about which Defendants complained relate to events that were necessarily "'separate in time'" from the date of Plaintiff's arrest because these allegations deal more broadly with the implementation of the 287(g) program. Id. at 17-18 (quoting ECF No. 140 at 15). Judge Quarles opined that the Municipal Defendants had notice that the municipal liability claims would be litigated if Plaintiff proved that the Deputies had violated her constitutional rights and, while bifurcation delayed discovery on those claims, it did not foreclose that discovery. Id. at 18-19. Finally, Judge Quarles held that, at least as to Plaintiff's Fourth Amendment claim against the Municipal Defendants, amendment would not be futile. Id. at 24.[6] Judge Quarles then ordered Plaintiff to file a perfected Third Amended Complaint which she did on September 25, 2015. ECF No. 150.

The Third Amended Complaint asserts four claims. Count One asserts a claim under § 1983 for "Unlawful Seizure" in violation of the Fourth and Fourteenth Amendments and is brought against the Deputies in their individual and official capacities. Count Two asserts a claim under § 1983 for "Unlawful Arrest" in

---

[6] Judge Quarles did hold it would be futile for Plaintiff to attempt to relitigate her Fourteenth Amendment Equal Protection claims as they were abandoned by Plaintiff's failure to appeal Judge Legg's ruling dismissing those claims.

violation of the Fourth Amendment and is also brought against the Deputies in their individual and official capacities.  Count Three is a claim under § 1983 for "Personal Supervisory Liability" against Sheriff Jenkins in his individual and official capacities.  Count Four asserts a Monell[7] "Entity Liability" claim against the Board.

In its motion to dismiss, or for summary judgment, and motion to strike, Defendants raise a number of challenges to the Third Amended Complaint, several of which can be dealt with in short order.  First, Defendants suggest that by reinserting the allegation that the Deputies were acting "under the guise of the 287(g) program" - an allegation that was present in the original Complaint but eliminated from the Second Amended Complaint - Plaintiff is again alleging that the Deputies were acting under color of federal law.  Pointing to Judge Legg's ruling on the first motion to dismiss, Defendants argue that Plaintiff cannot bring a § 1983 action, but only a Bivens action.  Plaintiff responds by emphasizing that she is not alleging that the Deputies were actually participating in the 287(g) program, but only acting "under the guise" of such a program.  The Court concludes that Plaintiff's claims are properly brought under § 1983.  See Santos, 725 F.3d at 463 (rejecting similar arguments

---

[7] Monell v. New York City Dept. of Social Serv., 436 U.S. 658 (1978).

by Defendants and concluding that Plaintiff properly brought a § 1983 claim based upon her averment that the Deputies were not participating in the 287(g) program).

Defendants next argue that the individual capacity claims against the Deputies must be dismissed based upon the Fourth Circuit's ruling that they are entitled to qualified immunity. Plaintiff concedes as much. ECF No. 158 at 15. Defendants also argue that, while the individual capacity claims against Sheriff Jenkins were not before the Fourth Circuit, the individual capacity claims against him should be dismissed as well. Plaintiff also concedes that issue. Id. at 18 n.5. Counts One, Two, and Three will be dismissed to the extent they purport to assert individual capacity claims against the Deputies or Sheriff Jenkins.

Defendants next take issue with Plaintiff's inclusion in the Third Amended Complaint of allegations that Defendants engaged in unconstitutional discrimination on the basis of race or ethnicity and ask that the Court strike those allegations. In response to Judge Quarles' ruling that Plaintiff's equal protection claims were not viable, Plaintiff removed those claims from the perfected Third Amended Complaint[8] but many of the allegations supporting those claims remain. Rule 12(f) of

---

[8] The caption of Count One and one of the allegations in that count reference the Fourteenth Amendment. ECF No. 150 at 15; id. at 16 ¶ 83. Those references will be stricken.

the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants acknowledge, however, that "'before a motion to strike will be granted the allegations must be both immaterial and prejudicial.'" ECF No. 157-1 at 30 (quoting Hare v. Family Publications Service, Inc., 342 F. Supp. 678, 685 (D. Md. 1972)). Furthermore, Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990).

The Court will not strike those allegations at this time. While the Plaintiff's Equal Protection claims are no longer viable, the challenged allegations help provide the factual context for Plaintiff's unlawful seizure claims. Plaintiff alleges that Sheriff Jenkins' pattern of unlawful arrests and seizure was the result of his unlawful immigration enforcement program. The Fourth Circuit specifically found that the Deputies "lacked authority to enforce civil immigration law and violated Santos's rights under the Fourth Amendment when they seized her solely on the basis of the outstanding civil ICE

11

warrant." Santos, 725 F.3d at 465.[9] Thus, Sheriff Jenkins' alleged anti-immigration policies could provide some critical background information to place the Deputies' conduct in context.

The central issue raised in the pending motion, however, is whether Sheriff Jenkins is an official of Frederick County or an official of the State of Maryland. If a state official is acting in his official capacity as a state official, he would be entitled to Eleventh Amendment Immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). In a closely related argument, Defendants contend that, because Sheriff Jenkins is a state official, the County cannot be held liable under Monell for his conduct or that of his deputies. See Rossignol v. Voorhaar, 321 F. Supp. 2d 642, 651 (D. Md. 2004) (dismissing claim against the county premised on actions of the county sheriff). In attempting to answer the question on remand, i.e., "whether the deputies' unconstitutional actions are attributable

---

[9] Despite the Fourth Circuit's clearly stated finding, Defendants suggest that "[t]here has been no finding of fact, only a judgment that the Deputies were not entitled to summary judgment." ECF No. 157-1 at 45. This Court finds no support for that position in the Fourth Circuit's opinion. The Fourth Circuit noted that the Deputies' "only basis for detaining Santos was the civil ICE warrant" and that they violated her constitutional rights when they seized her on that basis. Santos, 725 F.3d at 465. The Deputies cannot now, on remand and years after the event, manufacture some other justification for their detention of Plaintiff.

to an official policy or custom of the county or the actions of a final county policymaker," Santos, 725 F.3d at 470, Plaintiff has focused on Sheriff Jenkins as that potential final county policymaker.  If, however, Sheriff Jenkins is a state official and not a county official, he would not be making county policy and there would be no basis to extend liability to the County for his conduct.

The Maryland Court of Appeals as well as this Court have held that, as a general rule, county sheriffs in Maryland are state officials and not county officials under Maryland law. See, e.g., Rucker v. Harford Cnty, 558 A.2d 399, 402 (Md. 1989); Rossignol, 321 F. Supp. 2d at 651.  That rule has not been universally applied, however, to automatically bar county liability for the actions of the county sheriff.  In Fether v. Frederick Cty, No. 12-1674, 2013 WL 1314190, at *7 (D. Md. Mar. 29, 2013), the personal representative of a detainee who committed suicide while held in the Frederick County Detention Center alleged that Sheriff Jenkins and Frederick County engaged in policies, customs and practices that were deliberately indifferent or in reckless disregard to the health and safety of detainees.  As here, the defendants argued that dismissal of the municipal liability claims against Frederick County was appropriate because Sheriff Jenkins and not Frederick County was

13

responsible for policymaking at the Detention Center and that Sheriff Jenkins is a state not county official.

In considering whether dismissal was appropriate, Chief Judge Catherine Blake opined that:

> Although the Court of Appeals of Maryland has concluded that, under Maryland law, sheriffs are state rather than local government employees, see Rucker v. Harford Cnty., 558 A.2d 399, 402 (Md. 1989), this does not end the inquiry for either Frederick County or Sheriff Jenkins.  In Dotson v. Chester, 937 F.2d 920, 924 (4th Cir. 1991), the Fourth Circuit concluded that "County liability for the Sheriff's operation of the County Jail depends on whether the Sheriff had final policymaking authority for the County over the County."  The court explained that "liability relies more on final policymaking authority than on the technical characterization of an official as a state or county employee."  Id. (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).  It is the individual's function — not his or her title — that matters.

Fether, 2013 WL 1314190, at *7.  Chief Judge Blake concluded that, "[a]lthough it is a close question, it may be that notwithstanding Sheriff Jenkins's status as a state employee, his actions or inactions could represent Frederick County's policies or customs for which Frederick County will be legally responsible."  Id.

Similarly, in Durham v. Somerset County, No. 12-2757, 2013 WL 1755372 (D. Md. Apr. 23, 2013), the undersigned denied a motion to dismiss Somerset County from a § 1983 action premised on the conduct of the Somerset County Sheriff.  As here, defendants argued that, because the sheriff was a state

official, he was immune from suit under the Eleventh Amendment and that, because he was not an employee of the county, the county could not be held liable for his actions. Id. at *2. This Court found that some discovery was necessary before those arguments could be adequately evaluated and also opined that those "decisions of this Court categorically holding that county sheriffs acting in their official capacities are always state actors may have been wrongly decided." Id. at *3 n.3.

Beyond the question of Sheriff Jenkins's status as a county or state official, the Court notes that the Third Amended Complaint also includes allegations about the Board's role in the formulation of immigration enforcement policy in the County. In the memorandum in which Judge Quarles concluded that Plaintiff's Fourth Amendment claims would not be futile, he noted that Plaintiff alleged that "Jenkins updates the Board 'about federal immigration enforcement by the FCSO'" and "Jenkins and the Board allegedly created or promulgated a policy, practice, or custom under which local law enforcement officials engage in unlawful conduct." ECF No. 148 at 5 (quoting and citing ECF No. 136-1 ¶¶ 106, 130-31) (emphasis added). Judge Quarles also noted allegations in the proposed Third Amended Complaint concerning events that occurred after the filing of this action, including the allegation that the Board "approved of the actions" of the Deputies and "expressed

such approval in public comments and in a [Board] letter in support and approval of Defendants Jenkins and [the Deputies] a mere day after the Fourth Circuit Court of Appeals issued its opinion and judgment." Id. (citing ECF No. 136-1 ¶ 74). Because of Judge Legg's bifurcation order, the role of the Board in these policies has not been subject to any meaningful discovery.[10]

For all these reasons, the Court finds that Defendants' motion must be denied as to the municipal liability claims against the Board and the official capacity claims against Sheriff Jenkins and the Deputies.  Discovery is permitted to go forward as to Plaintiff's municipal liability claim and her damages.  The parties are requested to meet and confer and determine if they can agree to an appropriate schedule for discovery and dispositive motions on these issues and to then submit a status report to the Court on or before June 24, 2016.

Accordingly, IT IS this 16th day of June, 2016, by the United States District Court for the District of Maryland,
ORDERED:

1) That Defendants' Motion to Dismiss Third Amended Complaint or, in the Alternative, for Summary Judgment and

---

[10] Defendants also argue that, even if there was an actionable constitutional claim, recoverable damages would be limited to $1 nominal damages.  ECF No. 157-1 at 47-50.  Judge Legg's bifurcation order, however, also delayed any discovery related to Plaintiff's damages.

16

Motion to Strike, ECF No. 157, is GRANTED in part and DENIED in part, in that:

    a) The individual capacity claims against Sheriff Jenkins, Deputy Jeffrey Openshaw and Deputy Kevin Lynch are DISMISSED;

    b) Count One is DISMISSED to the extent it purports to bring a claim under the Fourteenth Amendment of the U.S. Constitution; and

    c) The motion is otherwise DENIED; and

    2) The parties shall meet and confer and submit, on or before June 20, 2016, a proposed scheduling order for the completion of discovery and filing of dispositive motions regarding municipal liability and damages; and

    3) The Clerk of the Court shall transmit a copy of this Memorandum and Order to all Counsel of Record.

                                          _____/s/_____
                                          William M. Nickerson
                                          Senior United States District Judge